# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. WALLER, JR., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY, etc., et al.,<br><br>Defendants. | CASE NO. 11cv0454-LAB (RBB)<br><br>**ORDER DENYING MOTION TO DISMISS** |

Robert Waller bought a Hewlett Packard "SimpleSave" from Costco that, he alleges, didn't work as described on the packaging. He expected the SimpleSave—a portable hard drive that plugs into a computer's USB port and backs up files automatically—to back up *all* of his files with no configuring on his part. Instead, it only backed up *some* files, which Waller learned the hard way when his computer crashed several months after he purchased the SimpleSave and his WordPerfect files were not on it. He asserts claims against HP and the retailers Costco and Staples for: (1) unfair business practices under Cal. Bus. and Prof. Code § 17200; (2) untrue and misleading advertising under Cal. Bus. and Prof. Code § 17500; and (3) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750. He also brings this case as a putative class action. Now pending is Defendants' motion to dismiss.

## II. Legal Standard

A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to Waller. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat a 12(b)(6) motion, a complaint's factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "some threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While the Court must draw all reasonable inferences in Waller's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to accept any legal conclusions as true. *Iqbal*, 129 S.Ct. at 1949. A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement" (*Id.* (internal quotations omitted)), nor if it contains a merely formulaic recitation of the elements of a cause of action. *Bell Atl. Corp.*, 550 U.S. at 555.

## III. Discussion

Defendants argue that Waller's claims must fail because the SimpleSave packaging doesn't promise what Waller says it does. It promises that the hard drive will automatically back up *most*, not *all*, files. It must be manually configured to back up certain file extensions, like WordPerfect, and Defendants argue that the SimpleSave makes this clear.

Waller's complaint alleges that the SimpleSave packaging promises a backup of both *most* and *all* files:

> On the back of the packaging, Defendants make the representation to the consumer to "Just plug it in." Below the representation to the consumer to "just plug it in", are further representations by the Defendants on all the SimpleSave packaging in very small font white letters on a dark background just above five paragraphs written in French, Chinese, Japanese and Spanish, the representations that, "Yes, it's that easy! Automatic, hands-free backup. No software to install, no files to select. Frequent backup update of changed files. Back up and restore multiple computers. **Automatically supports most file types**." (Compl. ¶ 2.)
>
> The Defendants represent to purchasers of the SimpleSave product that all the consumer user has to do is "just plug it in", the device has "Automatic Backup Software", "Hands Free Backup", "Plug & Play Storage", "No complicated setting" and it "**finds and backs up all**" the consumer's "important files" without doing anything more and "Yes, it's that easy." (Compl. ¶ 10.)
>
> The SimpleSave packaging echoes this sentiment, claiming to provide "instant hands-free backup" in large letters in a prominent position on the SimpleSave packaging. Similarly, the packaging includes other prominent references to the products' ease, simplicity, thoroughness, completeness, and accessibility, including the representation that there is "no software to install" and "no files to select" and "**automatically supports most file types**" in the process of backing up files from the consumer's computer. Further, the packaging boasts the SimpleSave "**finds and backs up all your important files** the minute you plug it in." The device is represented to be so simple "anyone can use it" and that there is "no software to install and no files to select." (Compl. ¶ 11.)
>
> Given the advertisements and representations made on the SimpleSave's packaging, and in-store sales displays at Costco and Staples, the reasonable consumer purchasing the device is likely to be deceived by the representations to "just plug it in", the device has "Automatic Backup Software", performs "Hands Free Backup", "Plug & Play Storage", "No complicated setting" and that "**all important files**" of the consumer will be saved without the consumer doing more and there are "no files to select" in order to be backed up. (Compl. ¶ 45.)

The photocopies of the SimpleSave packaging that Waller attached to his complaint support these allegations. The following representations are made on what appears to be the back of the SimpleSave box:

- Automatic, hands-free backup - Finds and backs up all your important files the minute you plug it in.

- 3 -

11cv0454

- Backup so simple, anyone can use it - No software to install, no files to select.
- Frequent backup update - Backs up new and changed files every time your computer is idle for five minutes.
- Multiple-computer backup - Easy backup and restore for all your PCs.
- Automatically supports most file types - Easily add additional file types.

(Compl. Ex. 2.) The side of the packaging makes similar representations:

- Just plug it in.

- Automatic, hands-free backup
- No software to install, no files to select
- Frequent backup of changed files
- Back up and restore multiple computers
- Automatically supports most file types

(Compl. Ex. 1.) Another side of the packaging says, "Just plug it in . . . . Yes, it's that easy." (Compl. Ex. 1.) So, the facts of this case are rather straightforward. Going by the representations on the SimpleSave packaging, Waller expected that he could connect the SimpleSave to his computer and it would automatically back up all of his files, without him doing anything. That's not how the hard drive works, however, and the question is whether the statements on the packaging are sufficiently false and misleading to support the claims he asserts. The Court will address those claims one at a time.

### A.     Unfair Competition, Cal. Bus. and Prof. Code § 17200

Section 17200 of California's Business and Professions Code prohibits unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200. The section is written in the disjunctive, so it establishes three varieties of unfair competition: acts or practices that are unlawful, unfair, or fraudulent. *Podolsky v. First HealthCare Corp.*, 50 Cal.App.4th 632, 647 (2d Dist. 1996). The definition of an unlawful business practice is straightforward: "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). A fraudulent business practice is also straightforward: "one in which members of the public are likely to be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal.App.4th 1235, 1254 (2d Dist. 2009) (internal quotations omitted). *See also Paduano v. American Honda Motor Co., Inc.*, 169 Cal.App.4th

1453, 1469 (4th Dist. 2009). The definition of an unfair business practice is more elusive. One definition is a practice that "offends an established public policy" or that "is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *Id.* An unfair practice may also be one in which "(1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided." *Morgan* at 1255. *See also Merchante v. Sony Corp. of America, Inc.*, 2011 WL 6027602 at *2 (S.D. Cal. Dec. 5, 2011).

Waller calls Defendants' conduct unfair "in that the practice gives Defendants . . . an unfair advantage over producers of similar products and, thus, significantly threatens and harms competition." (Compl. ¶ 43.) As a whole, though, his UCL claim sounds mostly in fraud because it is based on "Defendants' . . . false and/or misleading representations about the capabilities, qualities and/or performance of the SimpleSave." (Compl. ¶ 43; *see also* Compl. ¶¶ 44, 46.) The Court therefore considers it a fraud-based UCL claim.[1] Such claims "can be based on representations that deceive because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *Morgan*, 177 Cal.App.4th at 1255 (internal quotations omitted). *See also Paduano*, 169 Cal.App.4th at 1469 ("A perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.") (internal quotations omitted). Whether a practice is fraudulent is generally a question of fact. *Paduano*, 169 Cal.App.4th at 1469. The focus is on the defendant's conduct, not on the defendant's subjective intent or the plaintiff's alleged damages. *Id.*; *Morgan*, 177 Cal.App.4th at 1255.

Defendants argue that a UCL claim like Waller's, based on fraud, must "identify with specificity an actual false statement made by the defendant." (Dkt. No. 4 at 7.) That is true, but the point needs to be more exact to reflect the difference between the *elements* of a

---

[1] Defendants argue that Waller's UCL claim fails to the extent it is premised upon allegations of unfair conduct, and the Court doesn't reach that issue. (*See* Dkt. No. 4 at 11.)

§ 17200 violation and the *pleading standard*. UCL claims are distinct from common law fraud claims as far as their elements go. "A common law fraudulent deception must actually be false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for relief under the UCL." *Morgan*, 177 Cal.App.4th at 1255 (internal quotations omitted). At the same time, "all claims alleging fraudulent business practices under section 17200 are subject to the heightened pleading standard of Rule 9(b)." *Krouse v. BAC Home Loans Servicing, LP*, 2011 WL 2367093 at *5 (E.D. Cal. June 9, 2011). That means Waller "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (acknowledging that "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL").

With these standards in mind, the Court finds that Waller has stated a claim under § 17200. The SimpleSave packaging promises "[a]utomatic, hands-free backup" of "all your important files the minute you plug in." (Compl. Ex. 2.) It promises that there are "no files to select." (*Id.*) Waller's complaint adequately alleges that these representations, which he identifies with particularity in compliance with Fed. R. Civ. P. 9(b), are "likely to deceive" consumers into believing that all they need to do is connect the SimpleSave to their computer's USB port and a total backup of files will begin.[2] Indeed, he alleges that on or around March 27, 2010 he was deceived by those representations in a Costco in Carlsbad, California, where he purchased a SimpleSave. (Compl. ¶ 24.) This isn't to say, of course, that Waller has a winning UCL claim. The reasonable interpretation of "no files to select" may be "no actual document files to select." It may be consistent with "no files to select" that users still need to specify certain file *extensions*, especially given the representation that the SimpleSave "[a]utomatically supports most file types - Easily add additional file types."

---

[2] Defendants argue that Waller makes too much of marketing and advertising slogans that amount to little more than sales talk and puffery, and aren't actionable under California law. (Dkt. No. 4 at 7–8 n.4.) The court in *Morgan* characterized the plaintiff's claims as "obscured by extraneous allegations," and the Court would say the same of Waller's complaint. *Morgan*, 177 Cal.App.4th at 1240. The real issue here is that the SimpleSave packaging arguably promises an automatic backup of all files with no user configuration, and that simply isn't how the product works.

Similarly, the promise of "[a]utomatic, hands-free backup" of "all your important files the minute you plug in" may be consistent with a requirement that users tell the SimpleSave, in the very beginning, to backup certain file types automatically. But those are not proper considerations at the motion to dismiss phase, and just as important, a UCL claim can be based on a "perfectly true statement" that is conveyed in a misleading manner.

It is not enough that Waller *states* a claim under the UCL, however. He must also have standing to bring it, which requires a loss of money or property as a result of the alleged unfair competition. *Morgan*, 177 Cal.App.4th at 1253; Cal. Bus. and Prof. Code § 17204. Defendants argue that Waller's damages—in essence, having to hire a computer consultant to retrieve lost files—weren't caused by the alleged misrepresentations on the SimpleSave packaging but by his own hard drive crashing. (*See* Compl. ¶ 26.) Indeed, before the crash the files were safe, even if they weren't on the SimpleSave. The Court rejects this argument for two reasons. First, to have standing to bring a UCL claim, a plaintiff "is not required to allege that [the] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Morgan*, 177 Cal.App.4th at 1257. It's true that it's really Waller's hard drive that failed him, but those files would have been saved if the SimpleSave representations, as Waller construed them, were true. They would have also been saved if the representations were more clear and Waller had understood that he had to configure his SimpleSave to back up WordPerfect files. Defendants cite no legal authority for the argument that causation of this nature—detrimental reliance, really—is too attenuated to give rise to a UCL claim. Second, Waller's alleged damages aren't limited to the cost of retrieving his lost files. The SimpleSave is also worth less to him than the purchase price given its true functionality, and his complaint seeks "the amount of money spent to purchase the SimpleSave hard drives at the center of this dispute." (*See* Compl. ¶ 48.) The implication here is that Waller would not have bought the SimpleSave—or else paid less for it—absent the misrepresentations. This can be the basis for a UCL claim. *Bower v. AT&T Mobility, LLC*, 196 Cal.App.4th 1545, 1555 (2d Dist. 2011) (implying that standing exists when "the defendant's alleged misrepresentation caused a consumer to purchase a product

that he or she would not have bought but for the misrepresentation and the product was worth less than represented by the defendant or was different from what the consumer wanted and expected to buy"). The Court finds that Waller has adequately alleged that he "suffered an injury in fact and has lost money or property" as a result of the SimpleSave's misrepresentations.[3] *See Morgan*, 177 Cal.App.4th at 1257. He therefore has standing to bring this class action.

### B. Untrue and Misleading Advertising, Cal. Bus. and Prof. Code § 17500

California's False Advertising Law prohibits product statements that are untrue or misleading, and which are known or should be known to be untrue or misleading. Cal. Bus. and Prof. Code § 17500. *See also Bower*, 196 Cal.App.4th at 1555; *Park v. Cytodyne Tech., Inc.*, 2003 WL 21283814 at *1 (San Diego County Sup. Ct. May 30, 2003). Ordinarily, a violation of the UCL's fraud prong is also a violation of the False Advertising Law, at least where the alleged violations are premised upon the same conduct. *Morgan*, 177 Cal.App.4th at 1259. *See also Park* at *1 (applying same legal standard to claims under §§ 17200 and 17500); *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 331–32 (1st Dist. 1998) (same).

Defendants' arguments for dismissing Waller's § 17500 claim are identical to those for dismissing his § 17200 claim, which the Court has already considered and rejected. For the same reasons that the Court found Waller states a claim under § 17200, it finds that he states a claim under § 17500.

### C. Violation of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750.

---

[3] The Court refers to "Defendants" as such because Costco and Staples have joined HP's motion to dismiss. (Dkt. Nos. 6, 42.) The Court finds that Waller's UCL claim survives Defendants' motion to dismiss, however, only insofar as it is based on the representations on the SimpleSave packaging, in particular the representation that the SimpleSave automatically saves *all* files. Waller attempts in his opposition brief to add the argument that the "Automatically supports most file types" representation is a violation of § 17200; the Court is much more skeptical of that claim, and anyway, it is not made in Waller's Second Amended Complaint.

The representations Waller attributes to Costco's and Staples's in-store displays, the Court finds, cannot support a fraud-based UCL claim, even if they are stated with particularity. (*See* Compl. ¶ 12.) The Court reserves on the issue, which neither Costco nor Staples have raised, whether they may be held liable under § 17200 simply for selling the SimpleSave in HP's allegedly misleading packaging.

Waller's third and final claim alleges a violation of California's Consumers Legal Remedy Act. The CLRA "declares unlawful a variety of 'unfair methods of competition and unfair or deceptive acts or practices' used in the sale or lease of goods or services to a consumer." *Bower*, 196 Cal.App.4th at 1556. Waller focuses on §§ 1770(a)(7) and (a)(9). The former prohibits "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another" in a transaction intended to result in the sale of those goods. The latter prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

Plaintiffs intending to bring a CLRA cause of action seeking damages must notify defendants at least 30 days in advance and give them that amount of time to correct the alleged wrongs. If a correction is made, no cause of action for damages will lie. Cal. Civ. Code § 1782; *Morgan*, 177 Cal.App.4th at 1259–60. Defendants argue that because Waller was delinquent in providing this notice, his CLRA claim must be dismissed with prejudice. In fact, Waller did send a notice letter to Defendants on September 30, 2010, well before he filed his Second Amended Complaint—the operative complaint that Defendants removed to this Court—on February 3, 2011. (Compl. ¶ 58.) He sent this notice letter only after Defendants moved to dismiss his original complaint, and just days before he filed his First Amended Complaint on October 5, 2010. (*See* Dkt. Nos. 1-1, 1-2.) The question, then, is whether a plaintiff can assert a cause of action under CLRA first, then provide the notice required by § 1782, and *then* amend his complaint so that the defendant will have had 30 days to address the alleged wrong.

Ordinarily, the answer is no. "[F]ailure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends." *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939, 950 (S.D. Cal. 2007). This Court in *Cattie* recognized that allowing plaintiffs to seek damages first and then later give notice and amend "would destroy the notice requirement's utility, and undermine the possibility of early settlement." *Id.* The analysis is different, however, when a plaintiff originally seeks only injunctive relief under § 1750, for which no notice is required, and later sends a notice letter

and amends his complaint to seek *damages* under the statute.  The statutory scheme expressly allows for an amendment in those circumstances.  *See* Cal. Civ. Code § 1782(d).  *See also Morgan*, 177 Cal.App.4th at 1260 ("Plaintiffs . . . were not required to provide notice before filing the original or first amended complaints because they did not seek damages under the CLRA in those complaints.").

This case is more like *Cattie* than *Morgan*.  In Waller's original complaint, he prayed for "all monies for violations of California Civil Code 1750, et seq." (Dkt. No. 1-1.)  He therefore sought damages for a § 1750 violation at the outset.  In his First Amended Complaint, Waller retreated and asked only that "the defendants and each of them should be enjoined from any further violations . . . ." (Dkt. No. 1-2 at ¶ 50.)  In his Second Amended Complaint, however, Waller reinstated his damages demand: "Accordingly, Defendants . . . have violated California Civil Code § 1750 . . . and the Defendants and each of them should pay actual and statutory damages . . . ." (Compl. ¶ 60.)  The Prayer for Relief in the Second Amended Complaint seeks also seeks "punitive damages for willfully violating California Civil Code § 1750."  If Waller's demand for damages under § 1750 in his Second Amended Complaint was his first such demand, the Court would have to follow *Morgan* and let the cause of action stand.  But Waller demanded damages under § 1750 in his original complaint, *before* he provided a notice letter and when he had the statutory obligation to do just that.  His claim for damages under the CLRA must therefore be dismissed *with prejudice*.  *Cattie*, 504 F.Supp.2d at 950.  *See also Laster v. T-Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1196 (S.D. Cal. 2005) (dismissing § 1750 claim with prejudice for failure to comply with § 1782).  Waller's claim for injunctive relief under § 1750 may stand.

**IV.   Conclusion**

Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  The Court finds that Waller has alleged sufficient facts to give rise to the reasonable inference that Defendants violated §§ 17200 and 17500.  His causes of action under each therefore survive—although only to the extent they are based on the representation on the SimpleSave packaging that the hard drive automatically saves *all* files.  Waller's cause of

action under Cal. Civ. Code § 1750 is dismissed with prejudice insofar as he seeks damages, but it remains insofar as he seeks injunctive relief.  The Court understands Defendants' frustration in facing Waller's claims.  The shifty evolution of Waller's complaint, along with the fact that Waller's original lawyer was his office-mate and ostensible law partner, raise a reasonable suspicion that Waller is more interested in sharing attorney's fees in this case than actually vindicating consumers' rights.[4]  The fact is that many SimpleSave purchasers who encountered the same frustrations as Waller would have simply returned the hard drive or written it off as a regrettable purchase; they would not have thought to file a class action lawsuit.  But the motivations of Waller aren't for this Court to judge.  Faced with his claims and their asserted factual bases, the Court finds that this case may proceed as described above.

**IT IS SO ORDERED**.

DATED: December 14, 2011

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[4] The Court shares Defendants' concern regarding Waller's standing to bring this action.  Waller alleges in his complaint that *he* bought the SimpleSave at Costco. (Compl. ¶ 24.)  In a response to Defendants' interrogatory, however, Waller explained that *his wife* bought the SimpleSave. (Dkt. No. 4 at 14 n.9.)  Rather than clear up any confusion with a sworn affidavit, Waller simply explains in his opposition brief that he and his wife were shopping together at Costco, where they have a family membership, and that he made the decision to buy the SimpleSave while she actually executed the purchase with their money. (Dkt. No. 32 at 1.)  On these facts, the Court finds that Waller has standing to sue under the UCL and CLRA.  See Cal. Bus. and Prof. Code § 17204 (standing under UCL);Cal. Civ. Code § 1761(d) (standing under CLRA).  The Court has considered the cases cited by Defendants and does not find them analogous.  *See, e.g.*, *In re Intel Laptop Battery Litig.*, 2010 WL 5173930 at *3 (N.D. Cal. Dec. 15, 2010) (individual plaintiff lacked standing to sue under UCL because his company purchased product at issue); *Marilao v. McDonald's Corp.*, 632 F.Supp.2d 1008, 1012–13 (plaintiff lacked standing under the UCL to bring a claim arising out of a gift card he received for free).  The Court's finding does not prevent Defendants from arguing later, at the class certification or summary judgment phase of this case, that additional discovery discredits Waller's account of the purchase.