DAVID J. NOONAN (SBN 55966)
MICAELA P. BANACH (SBN 226656)
KIRBY NOONAN LANCE & HOGE LLP
Diamond View Tower
350 Tenth Avenue, Suite 1300
San Diego, CA 92101
Telephone: (619) 231-8666
Facsimile: (619) 231-9593
E-Mail: dnoonan@knlh.com
        mbanach@knlh.com

KRISTOFOR T. HENNING (PA ID 85047) (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
E-mail: khenning@morganlewis.com

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. WALLER, JR., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | Case No. 11-cv-00454 LAB RBB<br><br>**DEFENDANT HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**Date:** **February 4, 2013**<br>**Time:** **11:30 a.m.**<br>**Place:** **Courtroom 9**<br>**Before:** **Hon. Larry Alan Burns** |

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTS ................................................................................................................... 2

A.   Plaintiff's SimpleSave Automatically Backs Up Hundreds Of File Types
     And Allows Users To Select Additional File Types For Back Up ........................ 2

B.   HP Made A Software Update Available So The SimpleSave Would
     Automatically Back Up All Of A User's Files ...................................................... 4

C.   SimpleSave Purchasers Received Different Messages .......................................... 5

D.   Plaintiff Understood When He Bought His 320 GB SimpleSave That It Did
     Not Automatically Back Up All Files And Purchased Three More
     SimpleSave Devices Even After Learning How They Would Treat His
     WordPerfect Files ................................................................................................. 6

III.  LEGAL STANDARD ............................................................................................ 6

IV.   ARGUMENT ......................................................................................................... 8

A.   Plaintiff Cannot Satisfy Rule 23's Predominance, Superiority,
     Cohesiveness, Typicality, Adequacy, And Commonality Requirements
     Because Individualized Inquiries Are Necessary To Resolve His Claims ............ 8

     1.   Individual Inquiries Are Required to Determine Whether Each
          Putative Class Member's SimpleSave Device Did, In Fact,
          Automatically Back Up All of His/Her Files .............................................. 9

     2.   Individual Inquiries Are Required to Determine Whether Each
          Putative Class Member Took Advantage of the Software Update ........... 11

     3.   Individual Inquiries Are Required to Determine What Each Putative
          Class Member Understood About His/Her SimpleSave .......................... 12

     4.   There Is No Alleged Uniform Misrepresentation ..................................... 14

     5.   Individual Inquiries Are Required to Resolve The
          Causation/Reliance And Materiality Elements of Plaintiff's Claims ....... 15

     6.   Plaintiff Has Not And Cannot Offer Any Reliable Method Of
          Calculating Classwide Restitution ........................................................... 18

     7.   Plaintiff Cannot Satisfy Rule 23's Manageability And Superiority
          Requirements............................................................................................ 18

B.   Plaintiff Cannot Ignore Other SimpleSave Purchasers ...................................... 20

C.   Certification Is Not Appropriate Under Rule 23(b)(2) ....................................... 22

     1.   Plaintiff Lacks Standing To Seek Injunctive Relief................................. 22

     2.   Plaintiff's Claim For Monetary Relief Is Not Merely Incidental To
          Injunctive Or Declaratory Relief............................................................. 23

     3.   No Single Injunction Could Benefit All SimpleSave Purchasers ............ 23

D.   Plaintiff Is Not A Typical Or Adequate Class Representative.............................. 24

E.   Plaintiff's Putative Class Is Overbroad And Not Ascertainable ......................... 24

V.    CONCLUSION.................................................................................................... 25

-i-

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*In re Aqua Dots Prods. Liab. Litig.,*
   654 F.3d 748 (7th Cir. 2011)..................................................................... 11

5

6

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.,*
   247 F.R.D. 156 (C.D. Cal. 2007) ............................................................. 18

7

8

*Avritt v. Reliastar Life Ins. Co.,*
   615 F.3d 1023 (8th Cir. 2010)................................................................... 21

9

*Burdick v. Union Sec. Ins. Co.,*
   No. 07-4028, 2009 WL 4798873 (C.D. Cal. Dec. 9, 2009) ..................... 22

10

11

*Campion v. Old Republic Home Protection Co., Inc.,*
   272 F.R.D. 517 (S.D. Cal. 2011).......................................... 8, 14, 18, 20

12

*Castano v. Am. Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996)...................................................................... 19

13

14

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................... 21, 23

15

*Chin v. Chrysler Corp.,*
   182 F.R.D. 448 (D.N.J. 1998) .................................................................. 20

16

17

*Clay v. Am. Tobacco Co.,*
   188 F.R.D. 483 (S.D. Ill. 1999)................................................................ 15

18

19

*Cohen v. DirecTV, Inc.,*
   178 Cal. App. 4th 966 (2009)................................................................... 20

20

*Cole v. Asurion Corp.,*
   No. 06-6649, 2010 WL 1407310 (C.D. Cal. Apr. 6, 2010) ...................... 8

21

22

*David-Miller v. Auto. Club of S. Cal.,*
   201 Cal. App. 4th 106 (2011)................................................................... 15

23

24

*Edwards v. Ford Motor Co.,*
   No. 11-1058, 2012 WL 2866424 (S.D. Cal. June 12, 2012)..................... 16

25

*In re Ferrero Litig.,*
   278 F.R.D. 552 (S.D. Cal. 2011).............................................................. 11

26

27

*Fine v. ConAgra Foods, Inc.,*
   No. 10-01848, 2010 WL 3632469 (C.D. Cal. Aug. 26, 2010)........... 16, 24

28

ii          Case No. 11-cv-00454 LAB RBB

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................... 7, 24

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .......................................................................................... 24

*Hawkins v. Comparet–Cassani*,
    251 F.3d 1230 (9th Cir. 2001) ........................................................................................ 22

*Helm v. Alderwoods Grp. Inc.*,
    No. 08-01184, 2011 WL 855810 (N.D. Cal. Mar. 9, 2011) ............................................ 19

*In re Hotel Tel. Charges*,
    MDL No. 89, 500 F.2d 86 (9th Cir. 1974) ...................................................................... 18

*In re Intel Laptop Battery Litig.*,
    No. 09-02889, 2011 WL 7290487 (N.D. Cal. Apr. 7, 2011) .......................................... 23

*Jimenez v. Domino's Pizza, Inc.*,
    238 F.R.D. 241 (C.D. Cal. 2006) .................................................................................... 23

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) .................................................................................... 11

*Johnson v. General Mills, Inc.*,
    276 F.R.D. 519 (C.D. Cal. 2011) ................................................................................... 11

*Johnson v. Harley-Davidson Motor Co. Group, LLC*,
    285 F.R.D. 573 (E.D. Cal. 2012) .................................................................................... 16

*Konik v. Time Warner Cable*,
    No. 07-763, 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) ..................................... *passim*

*Lavie v. Procter & Gamble Co.*,
    129 Cal. App. 4th 496 (2003) ........................................................................................ 16

*Leong v. Square Enix of Am. Holdings, Inc.*,
    No. 09-4484, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) .......................................... 13

*Lewallen v. Medtronic USA, Inc.*,
    No. 01-20395, 2002 WL 31300899 (N.D. Cal. Aug. 28, 2002) ....................................... 8

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ......................................................................................................... 23

*Mahfood v. QVC, Inc.*,
    No. 06-0659, 2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) .......................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Mazur v. eBay, Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) ..................................................................... 24

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................... *passim*

*Moheb v. Nutramax Lab. Inc.*,
   No. 12-3633, 2012 U.S. Dist. LEXIS 167330 (C.D. Cal. Sept. 4, 2012) ........................ *passim*

*O'Shea v. Epson Am., Inc.*,
   No. 09-8063, 2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) ............................... 14, 21, 22, 25

*Oshana v. Coca-Cola Co.*,
   225 F.R.D. 575 (N.D. Ill. 2005) ..................................................................... 13, 25

*Pagan v. Abbott Labs., Inc.*,
   No. 10-4676, 2012 WL 5289622 (E.D.N.Y. Oct. 20, 2012) ..................................... 19

*In re Paxil Litig.*,
   212 F.R.D. 539 (C.D. Cal. 2003) .................................................................... 22

*Pfizer Inc. v. Super. Ct.*,
   182 Cal. App. 4th 622 (2010) ............................................................. 15, 17, 20, 21

*In re PPA Prods. Liab. Litig.*,
   214 F.R.D. 614 (W.D. Wash. 2003) ................................................................. 19

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ................................. 14

*Sanchez v. Wal-Mart Stores, Inc.*,
   No. 06-02573, 2009 WL 1514435 (E.D. Cal. May 28, 2009) ......................... 16, 17

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................. 25

*Schwartz v. Upper Deck Co.*,
   183 F.R.D. 672 (S.D. Cal. 1999) ................................................................... 19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   130 S. Ct. 1431 (2010) ................................................................................. 21

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ....................................................................... 22

*Sweet v. Pfizer*,
   232 F.R.D. 360 (C.D. Cal. 2005) ............................................................. 8, 19, 22

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ................................................................................. 20, 21

*In re Toyota Motor Corp. Hybrid Brake Litig.*,
    No. 10-2172, 2013 WL 150205 (C.D. Cal. Jan. 9, 2013) ...................................... 11

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Ind. & Serv. Workers Int'l*
    *Union v. Shell Oil Co.*,
    602 F.3d 1087 (9th Cir. 2010)........................................................................... 25

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)............................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................... *passim*

*Webb v. Carter's, Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ............................................................. 16, 19, 21

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ....................................................................... 11

*Woods v. Google, Inc.*,
    No. 11-01263, 2012 WL 3673319 (N.D. Cal. Aug. 24, 2012) ................................. 8

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001), *amended by*, 273 F.3d 1266 (9th Cir. 2001) .............. 8, 18, 19

**STATUTES**

Cal. Bus. & Prof. Code §§ 17204, 17203, 17535 .......................................................... 8

**RULES**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

**OTHER AUTHORITIES**

Article III of the U.S. Constitution ................................................................... 21, 22

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

I.      **INTRODUCTION**

Plaintiff Robert A. Waller ("Plaintiff") bought a Hewlett-Packard Co. ("HP") 320 GB SimpleSave external hard drive from Costco in March 2010. The device had a preconfigured list of over 400 electronic file types that it automatically backed up; but it also allowed users to add other file types not on that list (like ".wpd" WordPerfect files) for back up. To that end, the packaging disclosed that it automatically supported "most" file types and the User Manual loaded on the SimpleSave instructed users how to determine which file types would be automatically backed up and how they could add other file types for back up. Plaintiff (a practicing attorney who claims he thought his SimpleSave automatically backed up ".wpd" WordPerfect files without any action from him) filed this putative class action lawsuit alleging that HP violated California's Unfair Competition Law ("UCL") and False Advertising Act ("FAA") by misrepresenting to him on the package that his SimpleSave would automatically back up *all* file types (including ".wpd" WordPerfect files) and by failing to explain to him that it did not or how to add more file types for back up.[1] Plaintiff now seeks certification of a class of "all persons who purchased a . . . SimpleSave . . . [in] California." Dkt. No. 82. The Court should deny class certification for several reasons—but primarily because the key issues raised by Plaintiff's claims can be resolved only by examining each purchaser's SimpleSave experience.

The Court cannot even decide whether any alleged statement that a SimpleSave would automatically back up all of a user's files is true except by examining his/her computer files. Any such statement is undisputely true for the majority of purchasers who used only file types that were automatically supported by the device. These purchasers can only be identified through purchaser by purchaser examinations that preclude class certification. Tellingly, the only file type Plaintiff has identified in his Complaint that was not automatically backed up—".wpd" WordPerfect files—was installed on less than 1% of all personal computers ("PCs") during the relevant time period.

---

[1]      The Court made it clear at the motion to dismiss stage that Plaintiff's claims survived only insofar as he alleges that HP informed him on the packaging for his SimpleSave that it would automatically back up "*all* files." Dkt. No. 45 at 8 n.3 (italics in original). *See id.* at 10:26–28.

1    That is not all.  HP released a free software update in August 2010 that made SimpleSaves

2   like the one Plaintiff bought automatically back up all of a user's files without any additional user

3   action—and all SimpleSaves manufactured after that point were made with the updated software.

4   Plaintiff's SimpleSave has the software update.  Purchaser by purchaser inquiries are required,

5   therefore, to determine at least which purchasers took advantage of this free update and received a

6   product that backed up all of his/her files.

7    Other individualized inquiries are necessary to determine whether each purchaser was

8   injured at all (let alone from HP's conduct), including whether: (1) he/she knew (like Plaintiff)

9   that there might be files the SimpleSave did not automatically back up, (2) he/she (unlike

10   Plaintiff) read the electronic User Manual loaded on the SimpleSave that contained the

11   disclosures Plaintiff contends should have been made, or (3) he/she knew how the SimpleSave

12   operated (like Plaintiff did before he bought three additional SimpleSaves), and (4) any statement

13   or omission regarding the SimpleSave's treatment of WordPerfect or other files influenced his/her

14   purchase, among others.

15    Simply put, there is no "glue" holding all of the putative class members' claims together

16   such that they can all be resolved at the same time "in one stroke."  *Wal-Mart Stores, Inc. v.*

17   *Dukes*, 131 S.Ct. 2541, 2551, 2552 (2011).  To the contrary, the resolution of each purchaser's

18   claims depends on an examination of his/her own unique facts and the resolution of one

19   purchaser's claim does not resolve the claim of any other purchaser.  Plaintiff, for his part, has

20   offered no manageable plan to address any of the individual issues that permeate his claims.

21   Therefore, the Court should deny his motion for class certification.

22   **II.    FACTS**

23   **A.    Plaintiff's SimpleSave Automatically Backs Up Hundreds Of File Types And
        Allows Users To Select Additional File Types For Back Up.**

24
25    The SimpleSave is an external hard drive that allows users to back up data from their

26   computers onto the device.  *See* Dkt. No. 1-3 ¶13.  Plaintiff bought a 320 GB model from a

     Costco store in California on March 27, 2010 for $79.99.  Dkt. No. 1-3 ¶24.  The SimpleSave he

27   bought was pre-configured to automatically back up over 400 types of files, including commonly

28

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

used file types like Microsoft Office files (like ".doc," ".docx," ".pdf," ".ppt," and ".xls"),[2] photo files (like ".jif" and ".jpeg"), video files (like ".mpe," ".mpg," and ".mpv"), e-mail files (like ".eml" and ".pst"), and music files (like ".mp3" and ".wav"), among others.  *See* Declaration of John Main ("Main Dec.") ¶¶7-8; Bass Dec. ¶21.   The same is true for all versions of the SimpleSave released before August 2010.  These models all allowed users to select other file extensions not on the pre-configured list—including WordPerfect ".wpd" files—to be automatically backed up.  Main Dec. ¶10.  In 2009-2010, fewer than 1% of PCs had WordPerfect installed as word-processing software.  Bass Dec. ¶15.  By contrast, the list of file extensions preconfigured for automatic back up likely covered the types of files used by the vast majority of PC users.[3]  *Id.* ¶23.

HP provided a Quick Install Guide with the SimpleSave and also an electronic User Manual loaded on the device that explained the process for identifying the file types that were automatically backed up and for adding more file types (like WordPerfect ".wpd" files) to the list of files that will be automatically backed up.[4]  Main Dec. ¶¶11-13.  As explained in the User Manual, the user is given an opportunity to review all files and file types that will be backed up before the backup process begins.  *See id.*, Ex. 2 at 3 (stating user is "presented with a summary of the files found on your computer grouped into different content categories"); *see also id.* at 4; Main Dec. ¶¶11-13.  The User Manual also explains the process for adding more file types for automatic backup.[5]  *See id.* Ex. 2 at 9–10 (providing instructions under the "File Types and

---

[2]   The Microsoft Office suite of files held approximately 97% of the U.S. market share for productivity software as of 2006.  Declaration of Portia Bass ("Bass Dec.") ¶32.

[3]   Plaintiff testified that his 320 GB SimpleSave might not have backed up his "Timeslips" attorney timekeeping software, but he was not certain and did not identify the file extension he claims was not backed up.  KTH Dec., Ex. A 52:22-53:13.  In any event, it is estimated that in 2009-2010, Timeslips was installed on "less than one tenth of 1% of PCs."  Bass Dec., ¶¶38-47.

[4]   The written "Quick Install Guide" enclosed in the packaging directed the user to the User Manual located on the device for additional information:  "Please see the user manual located on the drive for more detailed information on the use of this product."  Main Dec., Ex. 1 at 1.

[5]   Under the "**Adding a New File Type Extension**" heading, the User Manual explains that: "HP SimpleSave backs up a defined set of file types.  If you have special programs that use an uncommon file type, you may need to add a new extension to the list of file types to be backed up.  If you need to add a custom file type extension, click on the green "+" located in the bottom

1   Locations" sub-heading in the "My Options" section of User Manual); *see also id.* at 3 ("To

2   change backup options including file types and locations, see 'My Options' on page 9"); 4

3   (instructing user to "click on **Change File Types and Locations**" "to make any changes to the

4   file types, folders, or locations to be backed up").   Select screen shots of this process are included

5   in the Main Declaration.  *See* Main Dec. ¶¶23-40.

6       **B.    HP Made A Software Update Available So The SimpleSave Would
            Automatically Back Up All Of A User's Files.**

7

8           By March of 2010, HP began work on modifying the SimpleSave software to make the

9   device automatically back up all file types (including ".wpd" WordPerfect files) without any

10  additional action by the user.  Main Dec. ¶19.  HP provided this software to purchasers of the

11  earlier-released SimpleSave products at issue here (like the 320 GB device Plaintiff bought) via a

12  free software update in August 2010.  *Id.* ¶16.  Importantly, the SimpleSave was configured to

13  automatically check for software updates any time the device was attached to a computer that was

14  connected to the Internet.  *See id.* ¶20; *id.*, Ex. 2 at 10.  It was considered a "sticky" update

15  because, even if the user declined the download, he/she would be prompted again the next time an

16  Internet connection was available.  Main Dec. ¶21.  That free software update, and subsequent

17  similar versions, remain available for download today.  *Id.* ¶16.  Each SimpleSave model released

18  after August 2010 was made with this updated software and, therefore, backed up all of a user's

19  files (unless the user chose otherwise).  *Id.* ¶22.  An inspection of Plaintiff's 320 GB SimpleSave

20  on January 7, 2013 found the software update on his device.  *See* Declaration of Michael

21  Bandemer ¶¶12-13.  Putative class members who, like Plaintiff, downloaded the free software

22  update had a device that would automatically back up all of their files (including ".wpd"

23  WordPerfect files) in its default setting.  *See* Main Dec. ¶17.

24      **C.    SimpleSave Purchasers Received Different Messages.**

25          The packaging for the 320 GB SimpleSave disclosed that the device automatically

26  supports "most file types."  Dkt. No. 1-3 ¶11; *see also id.* Ex. 1 (same).  The packaging for the 1

27

28  right of the screen.  Type in the extension and click **Save**."   Main Dec., Ex. 2 at 10 (bold in
    original).

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

TB SimpleSave and larger capacities made the same disclosure, but further informed purchasers that they could "Easily add additional file types" for automatic backup. *See* Dkt. No. 1-3 Ex. 2.

Descriptions of the SimpleSave found online also differed from the language on the 320 GB packaging over which Plaintiff has complained. For instance, a product listing on Amazon.com explained that the product "supports a wide variety of file types automatically" but further discloses that "you can enter additional file types if you need to." KTH Dec., Ex. C at 2. Other retailers, like RestockIt.com, included no substantive description about the device's functionality or text from the product packaging. *Id.* Ex. D.

Other information available online explained that the device, as originally configured, did not automatically back up every file type. For example, the "computer industry website" article referenced in Plaintiff's Complaint praised how easy the SimpleSave is to use and noted that it did not automatically back up every file type ever created.[6] *See* Dkt. No. 1-3 ¶4; *see also id.* Ex. 3. Internet posts from SimpleSave owners attached to Plaintiff's Complaint that predated Plaintiff's purchase also discuss the device's treatment of certain files, including WordPerfect files. Dkt. No. 1-3 Ex. 4 at 1 (12/13/2009 entry stating 1 TB device did not back up "WordPerfect document files").

### D. Plaintiff Understood When He Bought His 320 GB SimpleSave That It Did Not Automatically Back Up All Files And Purchased Three More SimpleSave Devices Even After Learning How They Would Treat His WordPerfect Files.

The packaging for Plaintiff's 320 GB SimpleSave disclosed that it automatically supports "***most*** file types." Dkt. No. 1-3 ¶11 (emphasis added); *see also id.* at Ex. 1 (same); KTH Dec.,

---

[6] The article provided in pertinent part:

> [R]eally, backing up your hard drive with the SimpleSave couldn't be much easier. It's as simple as plugging in the hard drive, starting the HP Launcher software, and letting it run . . . .

> [T]he list of [file] extensions [it automatically backs up] is . . . extensive and this is usually no problem. The software backs up almost every extension an average computer user could want, over 330 out of box. Common files like music, photos, documents, and e-mails will all be saved automatically and easily. However, if you work with a more specialized or uncommon kind of file type, then there is a chance it won't automatically recognize the file type and not back it up. . . .

Over three years after its publication, this article still appears among the first page of results when searching Google for "HP SimpleSave hard drive review." KTH Dec., Ex. E.

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

Ex. A 86:4–9.  According to Plaintiff, he read that disclosure before his purchase and understood from it that there could be some file types that the device did not automatically back up.  KTH Dec., Ex. A 86:16–20; 88:2–7.  He thought it would back up his files because he considered them to be common and commercially available.  *Id.* 86:21–87:15

Approximately two weeks after his purchase, Plaintiff connected his SimpleSave to his computer to back up his files.  *Id.* 49:11–22; 50:9–16.  At some point shortly before May 19, 2010, Plaintiff's computer crashed and he connected his SimpleSave to a different computer to retrieve his files.  Dkt. No. 1-3 ¶26; KTH Dec., Ex. A 50:14–23.  It was then that Plaintiff claims to have realized that his SimpleSave did not automatically back up his Corel WordPerfect files with a ".wpd" file extension.  KTH Dec., Ex. A 50:14–23; 52:1–4; 70:7–10.  Months later, Plaintiff filed the present lawsuit without having first contacted HP to complain about his SimpleSave or to request a refund.  *Id.* 74:2–8.

Plaintiff learned before May 19, 2010 that SimpleSave devices like the one he bought a few months earlier did not automatically back up his ".wpd" WordPerfect files.  *Id.* 52:1–4.  Still, after that, he spent over $200 on three more SimpleSave devices.  *Id.* 70:7–10; 66:7–12; 95:8–19.  On May 22, 2010, he purchased two from the same Costco store where he made his initial purchase—a 320 GB device for $69.97 and a 1 TB device for $99.99.  KTH Dec., Ex. B at Interrog. No. 2.  In September 2010—over two months after suing HP—he purchased another 320 GB device at Staples for $49.99.  *Id.*; KTH Dec., Ex. A 72:4–73:9.

## III.   <u>LEGAL STANDARD</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Dukes*, 131 S.Ct. at 2550 (internal quotations omitted).  It is not sufficient for a plaintiff merely to allege the class certification requirements.  *Id.* at 2551 ("Rule 23 does not set forth a mere pleading standard.").  Plaintiff bears the burden of "affirmatively demonstrating that the [Rule 23] requirements" are met and that "there are *in fact* . . . common questions of law or fact, etc."  *Id.* at 2551, 2552; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (explaining that "[a]ctual, not presumed, conformance with Rule 23(a) remains . . .

1   indispensable").

2       Class certification is not appropriate unless a "rigorous analysis" reveals that all of the

3   Rule 23 requirements are met—an analysis that "[f]requently . . . will entail some overlap with

4   the merits of the plaintiff's underlying claim.  That cannot be helped."  *Dukes*, 131 S.Ct. at 2551;

5   *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).  As the Supreme

6   Court explained, "[c]ommonality requires the plaintiff to demonstrate that the class members

7   have suffered the same injury," and "[t]heir claims must depend upon a common contention . . . .

8   [that] must be of such a nature that it is capable of classwide resolution—which means that

9   determination of its truth or falsity will resolve an issue that is central to the validity of each one

10  of the claims in one stroke."  *Dukes*, 131 S.Ct. at 2551 (internal quotations omitted).  "What

11  matters to class certification . . . is not the raising of common 'questions' – even in droves – but,

12  rather the capacity of a classwide proceeding to generate common *answers* apt to drive the

13  resolution of the litigation."  *Id.* (internal quotations and citations omitted) (italics in original).

14      Plaintiff bears the burden of proving that: "(1) the class is so numerous that joinder of all

15  members is impracticable; (2) there are questions of law or fact common to the class; (3) [his]

16  claims . . . are typical of the claims . . . of the class; and (4) [Plaintiff and his counsel] will fairly

17  and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Plaintiff seeks

18  certification under Rules 23(b)(3) and (b)(2) and, thus, must also prove either (i) that "questions

19  of law or fact common to the class members predominate over any questions affecting only

20  individual members, and that a class action is superior to other available methods for fairly and

21  efficiently adjudicating the controversy" or that (ii) HP "has acted or refused to act on grounds

22  that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

23  is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(3) & (b)(2).

24  **IV.   ARGUMENT**

25      **A.   Plaintiff Cannot Satisfy Rule 23's Predominance, Superiority, Cohesiveness,
          Typicality, Adequacy, And Commonality Requirements Because**
26      **Individualized Inquiries Are Necessary To Resolve His Claims.**

27      Class certification should be denied where "the main issues in a case require the separate

28  adjudication of each class member's individual claim or defense."  *Zinser v. Accufix Research*

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

*Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *amended by*, 273 F.3d 1266 (9th Cir. 2001) (internal quotations omitted).[7]   In the words of the Supreme Court, class certification should be denied where the Court cannot resolve all putative class members' claims "in one stroke" based on a single body of evidence.  *Dukes*, 131 S.Ct. at 2251.  That is precisely the case here.

To sustain FAA claims and UCL claims based on the "fraudulent" and "unfair" prongs of that statute, a product purchaser must prove that he "suffered an injury in fact and . . . lost money or property as a result of" the defendant's allegedly fraudulent/deceptive or unfair advertising statements.  *See* Cal. Bus. & Prof. Code §§ 17204, 17203, 17535.[8]   More specifically in this case, in order to recover, Plaintiff and putative class members must have been injured as a result of an alleged misrepresentation on the packaging of their SimpleSave products that they would automatically back up all of a user's files.[9]   None of the elements of Plaintiff's claims are susceptible to classwide resolution, however.   To the contrary, individualized purchaser by purchaser inquiries are necessary to determine whether each putative class member was even exposed to a material misrepresentation/omission, whether he/she relied on any such misrepresentation/omission, or whether he/she suffered an injury as a result of HP's conduct.

---

[7]     Courts routinely deny certification under various prongs of Rule 23 where individualized determinations overwhelm the class analysis.  *See, e.g.*, *Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517, 528-39 (S.D. Cal. 2011) (denying certification on predominance and superiority grounds because individual examinations were necessary to resolve each putative class member's claims); *Dukes*, 131 S.Ct. at 2255-57 (finding that predominating individual questions defeat commonality); *Sweet v. Pfizer*, 232 F.R.D. 360, 368-70 (C.D. Cal. 2005) (finding plaintiffs could not establish typicality or adequacy because of myriad differences in class member experiences).   Likewise, "[e]ven though [Rule 23(b)(2)] does not contain a predominance and superiority requirement, the requisite cohesiveness is lacking where individual issues predominate."  *Lewallen v. Medtronic USA, Inc.*, No. 01-20395, 2002 WL 31300899, at *3 (N.D. Cal. Aug. 28, 2002).

[8]     *See also Cole v. Asurion Corp.*, No. 06-6649, 2010 WL 1407310, at *5 (C.D. Cal. Apr. 6, 2010); *Woods v. Google, Inc.*, No. 11-01263, 2012 WL 3673319, at *10 (N.D. Cal. Aug. 24, 2012).

[9]     Dkt. No. 45 at 10:26-28 ("[Plaintiff's] causes of action under [the UCL and FAA] therefore survive – although only to the extent they are based on the representation on the SimpleSave packaging that the hard drive automatically saves *all* files.") (italics in original); Dkt. No. 45 at 8 n. 3.

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

1          **1.     Individual Inquiries Are Required to Determine Whether Each**
           **Putative Class Member's SimpleSave Device Did, In Fact,**
2          **Automatically Back Up All of His/Her Files.**

3          According to Plaintiff, "[t]he overarching question in this case is whether HP's claims and

4   advertisements on the outside of the SimpleSave packaging [that the device would automatically

5   back up "*all* files"] are deceptive, false, untrue and/or misleading."  Motion at 17:14-16; Dkt. No.

6   45 at 8 n. 3; 10:26-28.  That is because a purchaser for whom any such statement was, in fact, true

7   logically has no viable claim against HP.  *See, e.g.*, *Konik v. Time Warner Cable*, No. 07-763,

8   2010 WL 8471923, at *9 (C.D. Cal. Nov. 24, 2010) (explaining that putative class members for

9   whom "statements in question were actually correct and not deceptive" could not recover under

10  UCL or FAA); *Mahfood v. QVC, Inc.*, No. 06-0659, 2008 WL 5381088, at *4 (C.D. Cal. Sept. 22,

11  2008) ("Even if the class were certified to include only members who relied upon [the statement

12  at issue], Plaintiff would still need to establish that [the statement] was misleading as to each

13  member of the class.").  Even for SimpleSave devices that were sold without the updated software

14  described above, however, there is no way to make that determination except by examining each

15  purchaser's own computer files.

16          Plaintiff's 320 GB SimpleSave and others released before August 2010 were pre-

17  configured to automatically back up hundreds of different files—including commonly used file

18  types like ".doc," ".docx," ".pdf," ".ppt," ".xls," ".jpeg," ".mpe," and ".pst."  Main Dec. ¶¶7-8.

19  For any SimpleSave purchaser who used his/her device with a computer that held only files on

20  that list, any alleged representation that his/her SimpleSave would automatically back up all of

21  his/her files was undeniably true.[10]  The list likely covered the files of the vast majority of PC

22  users in 2009-2010.  Bass Dec. ¶¶18-23; *see also* Dkt. No. 1-3 Ex. 3 at 2 ("The list of extensions

23  is . . . extensive and this is usually no problem.").  Indeed, Plaintiff's Complaint identified only

24  one file type (".wpd" WordPerfect files) that his SimpleSave did not automatically back up, but

25  _____

26  [10]     HP disagrees that the packaging for Plaintiff's 320 GB SimpleSave informed him it would
    automatically back up "all" files.  The packaging expressly informed Plaintiff that his SimpleSave
27  automatically supports "most" file types.  Dkt. No. 1-3 ¶11; *see also id.* Ex. 1.  Nevertheless, for
    all of the reasons set forth herein, the Court should deny class certification even taking Plaintiff's
28  characterization of the SimpleSave packaging as true.

                                                   9        Case No. 11-cv-00454 LAB RBB

during the relevant time period (2009-2010), HP's expert estimates that less than 1% of PCs had WordPerfect word processing software installed on them.  Bass Dec. ¶¶24-37.[11]  Put simply, the individualized purchaser by purchaser inquiries required to determine even whether the alleged representation that is the basis of Plaintiff's claims is true preclude class certification.

*Konik v. Time Warner Cable* is illustrative.  In that case, cable subscribers alleged that their new cable company violated the UCL and FAA by misrepresenting to them that they would receive the same product they had received from their old cable company for no additional cost and that there would be no service interruptions associated with the transition from their old cable company.  *See* 2010 WL 8471923, at *1.  The Court denied class certification because, *inter alia*, the cable company's statements were, in fact, true for many putative class members and "[d]etermining whether the statements were false as to each class member would require individual inquiries into the policies and choices of each subscriber."  *Id.* at *9 ("The evidence presented to the Court establishes that a large component of the proposed class did not experience any raises in price or deprivation in service.").  As the Court explained: (1) "Plaintiffs' claims cannot be typical of hundreds of thousands of subscribers for whom the statements in question were actually correct and not deceptive[;]" and (2) "[C]lass certification is not warranted where it is established that the statements were not deceptive as applied to a large component of the proposed class."  *Id.*; *see also id.* ("Where a substantial portion of the class would have no right to recover on the asserted legal claims, class certification must be denied.").  The Court should deny Plaintiff's motion for the same reasons.

Plaintiff makes no attempt to address this issue that goes to the heart of his claims.  Instead, he relies on four food labeling cases where the allegedly offending statements were either uniformly true or uniformly false across the entire putative class—*i.e.*, their truth or falsity did not depend on each putative class member's own circumstances.  Motion at 3:17-21 (citing *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009), *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 520 (C.D. Cal. 2011), *In re Ferrero Litig.*, 278 F.R.D. 552, 556 (S.D. Cal. 2011) and *Johns*

---

[11]     To the extent Plaintiff complains about his attorney time-keeping software, the percentage is even less (one tenth of 1%).  *See* Bass Dec. ¶¶38-47.

1   *v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012)).[12]   Here, on the other hand, purchaser by

2   purchaser examinations are necessary to determine whether his/her SimpleSave did, in fact,

3   automatically back up all of his/her files and, therefore, whether he/she was even exposed to an

4   alleged false statement.

### 2.   Individual Inquiries Are Required to Determine Whether Each Putative Class Member Took Advantage of the Software Update.

6   Class certification is also inappropriate because individualized inquiries are necessary to

7   determine whether each putative class member took advantage of the software update first made

8   available in August 2010 that made all previously manufactured SimpleSave devices

9   automatically back up all of a user's files.[13]   Indeed, for some purchasers, the updated software

10   already was available at the time they purchased and first used their SimpleSave, meaning that

11   they never would have operated the device without it.   Therefore, just as other courts have done

12   where the defendant made available an update that addressed the plaintiff's complaint, the Court

13   should deny class certification.   *See In re: Toyota Motor Corp. Hybrid Brake Litig.*, No. 10-2172,

14   2013 WL 150205, at *4 (C.D. Cal. Jan. 9, 2013) (denying class certification where "the updated

15   software installed in the Class Vehicles as part of the national recall rectified any actual or

16   perceived problem with the braking performance"); *see also*, *e.g.*, *In re Aqua Dots Prods. Liab.

17   Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (declining to certify class where product recall already

18   provided putative class with remedy).

19   Plaintiff (a lawyer) agreed in his deposition that an update like the software update would

20   have resolved his complaint—at least for those SimpleSave purchasers who, before the update,

21   did not try to back up files that were not on the pre-configured list of files or even apparently

22   those who did, but downloaded the update before losing any such files.   KTH Dec., Ex. A 103:18-

23   20 ("I suppose for people that hadn't already suffered some loss, that would cure the problem").

---

[12]   In *Johns*, for instance, the defendant claimed that its product "supports prostate health." *Johns*, 280 F.R.D. at 557.   Similarly, in *Johnson*, the defendant claimed its yogurt products "promote digestive health." *Johnson*, 276 F.R.D. at 520-21.

[13]   HP believes that the launch of the software update precludes a finding of injury or causation even for those purchasers who chose not to take advantage of it.   Still, for present purposes, the Court should deny class certification because of the individualized inquiries necessary to determine which purchasers actually took advantage of the software update.

1   Plaintiff, however, has offered no way to identify those purchasers short of examining each of

2   their individual circumstances.  The reason is obvious.

3           **3.**      **Individual Inquiries Are Required to Determine What Each Putative**
                  **Class Member Understood About His/Her SimpleSave.**

4

5           Individualized inquiries are also necessary to determine whether each purchaser

6   understood how his/her SimpleSave device operated.  Purchasers who understood how their

7   SimpleSave devices operated and, more specifically, that they did not automatically back up all

8   files cannot show an injury from any alleged misrepresentation to the contrary.  *See Mazza*, 666

9   F.3d at 596 (vacating certification because class "must . . . exclude those members who learned of

10  the . . . allegedly omitted" information before purchase); *Moheb v. Nutramax Lab. Inc.*, No. 12-

11  3633, 2012 U.S. Dist. LEXIS 167330, at *22 (C.D. Cal. Sept. 4, 2012) (rejecting UCL and FAA

12  class because members who knew "truth" about product were uninjured by alleged

13  misrepresentation).  Only an examination of each purchaser's circumstances can resolve that

14  issue.

15          First, the packaging for Plaintiff and other putative class members' SimpleSave devices

16  disclosed that they "automatically support[] most file types" (320 GB) and that users could

17  "[e]asily add additional files" for back up (1TB).  Dkt. No. 1-3 Ex. 1 (320 GB packaging) and Ex.

18  2 (1 TB packaging).  From the first disclosure, Plaintiff understood before his March 2010

19  purchase that there could be file types his SimpleSave did not automatically back up.  KTH Dec.,

20  Ex. A 86:16–20; 88:2–7.  Purchasers (like Plaintiff) who knew from HP's disclosures that their

21  SimpleSaves did not automatically back up all files cannot prove an injury caused by any alleged

22  misimpression to the contrary.  Only purchaser by purchaser inquiries can reveal each putative

23  class member's understanding of HP's disclosures.

24          Second, the User Manual loaded onto Plaintiff and other putative class members'

25  SimpleSaves disclosed how users could determine which files would be backed up and also how

26  to select additional file types for back up, if necessary.  Main Dec., Ex. 2 at 3-4, 9-10.  Purchasers

27  who read that User Manual (as well as others) cannot show any harm resulting from any alleged

28

ignorance of both facts.[14]  Again, only purchaser by purchaser inquiries can reveal which putative class members read the User Manual.  *See Moheb*, 2012 U.S. Dist. LEXIS 167330, at *21-22 (denying certification where Plaintiff could not show "that every member of the Class exposed to the alleged misrepresentation [was] ignorant of the truth . . . without significant, time-intensive, individualized evidence"); *cf. Leong v. Square Enix of Am. Holdings, Inc*., No. 09-4484, 2010 WL 1641364, at *4–5 (C.D. Cal. Apr. 20, 2010) (dismissing fraud claims over point-of-sale statement where applicable disclosures made in user manual).

Third, some putative class members knew from their experience or other sources of information how their SimpleSave devices operated before their purchases.  Plaintiff, for instance, spent over $200 on three SimpleSave devices *after* he concluded that they did not automatically back up his ".wpd" WordPerfect files.  KTH Dec., Ex. A 70:7-10; 66:7-12; 95:8-19; *see also id.*, Ex. B at Interrog. No. 2.  Moreover, according to Plaintiff, public information available online to potential SimpleSave purchasers as of September 14, 2009 disclosed that the device did not automatically back up all types of electronic files and, therefore, put those potential purchasers on notice that the SimpleSave might not automatically back up all of their files.  Dkt. No. 1-3 ¶4; *see also* Decl. of Itamar Simonson ¶¶13(b), 28 (finding that over 90% of survey respondents "seek information about product" before purchase from variety of sources such as Internet sites, search engines, and consumer reviews).  Again, only purchaser by purchaser inquiries can show what each putative class member knew about his/her SimpleSave's operation.  *See, e.g., Mazza*, 666 F.3d at 596 (vacating certification because class "must . . . exclude those members who learned of the . . . allegedly omitted" information "before they purchased or leased" car); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 581 (N.D. Ill. 2005) ("[A] class definition that includes individuals who purchased fountain diet Coke with full knowledge that fountain diet Coke contains saccharin is clearly inappropriate."); *see also Moheb*, 2012 U.S. Dist. LEXIS 167330, at *22.

### 4. There Is No Alleged Uniform Misrepresentation.

Courts consistently deny class certification in UCL and FAA false advertising cases where

---

[14]     Plaintiff agrees that an effective disclosure could come inside the product packaging.  *See* KTH Dec., Ex. B at Interrog. No. 22.

1    putative class members were not exposed to a single uniform representation.[15]  The same result

2    follows here.

3           The Court allowed Plaintiff's claims to proceed only to the extent he alleges that the

4    packaging for his 320 GB SimpleSave misrepresented to him that it would automatically back up

5    "all" types of electronic files.  Dkt. No. 45 at 8, n.3.  That packaging, however, is not uniform

6    among even the SimpleSave devices that were sold without the updated software.  Whereas the

7    packaging for Plaintiff's 320 GB SimpleSave disclosed that it "[a]utomatically supports most file

8    types," the packaging for the 1 TB SimpleSave (which Plaintiff bought after he knew it would not

9    automatically back up his ".wpd" WordPerfect files) made an additional disclosure that users

10   could "[e]asily add additional file types" for backup.  *Compare* Dkt. No. 1-3 Ex. 1 *with* Ex. 2.

11   Logically, a purchaser who sees a representation that "additional file types" could (and might

12   need to) be added could not plausibly interpret the SimpleSave packaging to mean that the 1 TB

13   device would automatically support "all" file types without exception.

14          In addition, even though the Court limited Plaintiff's claims to the packaging for his 320

15   GB SimpleSave, his putative class includes purchases made online where potential customers did

16   not see that packaging and, in fact, were exposed to varying descriptions of the SimpleSave

17   device.  A few examples prove this point.  In contrast to the 320 GB SimpleSave packaging

18   Plaintiff alleges he saw, a product listing on Amazon.com explained that the SimpleSave

19   "supports a wide variety of file types automatically" and further discloses that "you can enter

20   additional file types if you need to."  KTH Dec., Ex. C at 2.  Other retailers, like RestockIt.com,

21   neither described the device nor included text from the product packaging.  *Id.*, Ex. D.  The Court

22   should deny class certification for this reason as well.  *See O'Shea v. Epson Am., Inc.*, No. 09-

23   8063, 2011 WL 4352458, at *11 (C.D. Cal. Sept. 19, 2011) (denying certification where

24   "individuals who purchased certain models of class printers from certain third-party online

25   _____

26   [15]      *See Red v. Kraft Foods, Inc.*, No. 10-1028, 2011 WL 4599833, at *15 (C.D. Cal. Sept. 29, 2011) (denying certification because no evidence of uniform advertising campaign to which all

27   putative class representatives exposed); *Campion*, 272 F.R.D. at 536-37 (denying certification of UCL class where "proposed class members may have seen some, all or none of the statements"

28   which were made in "varying ways"); *see also Mazza*, 666 F.3d at 595 (vacating certification of class which included members who were not exposed to allegedly misleading advertisements).

sources, such as Amazon.com, were not exposed to the allegedly deceptive representation before they purchased their printers").

### 5.     Individual Inquiries Are Required to Resolve The Causation/Reliance And Materiality Elements of Plaintiff's Claims.

Without a presumption that all putative class members relied to his/her detriment on an alleged misrepresentation from the packaging of their SimpleSaves, the individualized inquires required to assess the influence (if any) of HP's statements or omissions on each SimpleSave purchaser preclude class certification.  *See, e.g.*, *Mazza*, 666 F.3d at 595-96 (reversing class certification in UCL and FAA case where presumption of reliance was unavailable).   No presumption of detrimental reliance can apply here for several reasons.[16]

As HP explained above, the SimpleSave (even in its pre-software update form) did, in fact, automatically back up every file created by the great majority of putative class members.  As a result, any alleged statement from HP that the device would automatically back up all of their files is undeniably true for them—and only individualized inquiries can identify those putative class members.  It would make no sense to presume that every putative class member relied to his/her detriment on an alleged misrepresentation where many putative class members did not receive a misrepresentation.

Not only that, but many purchasers were not even exposed to the alleged misrepresentation on the SimpleSave packaging that is the basis for Plaintiff's claims.  *See Mazza*, 666 F.3d at 595 (rejecting presumption of reliance where alleged misrepresentation was not made uniformly to all putative class members); *see also Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 492 (S.D. Ill. 1999) (explaining that class members "were not subjected to the same advertising and that advertising did not have a similar effect on all members"); *David-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 125 (2011) (same); *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 631–32 (2010).  As HP explained above, SimpleSave devices were sold online without that packaging and with product descriptions that differed from that found on the

---

[16]     If detrimental reliance were irrelevant for putative class members in federal court (as Plaintiff seems to suggest), then it would have been unnecessary for the Ninth Circuit to determine in *Mazza* whether a presumption of detrimental reliance could apply to the putative class.

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

SimpleSave packaging.  Those purchasers who knew how their SimpleSave devices operated (either from the "automatically supports most file types" and "easily add additional file types" disclosures, their experience, public information, or the User Manual) were also not exposed to an alleged misrepresentation at all.

Similar individualized inquiries pervade the materiality determination—and where that is true, class certification should be denied.[17]  *See Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 581 (E.D. Cal. 2012) (denying certification in light of "multiple factors affecting" what class members "would consider material when purchasing one of the class motorcycles"); *Webb v. Carter's, Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) (holding that "action is properly not certified as a class action" where "materiality and reliance would vary from consumer to consumer" and "consumers would not be expected to respond uniformly" even if disclosure had been made); *Sanchez v. Wal-Mart Stores, Inc.*, No. 06-02573, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (refusing to certify class because "'warning' would have made no difference in . . . purchase decision" for some given "the innumerable variations in the experiences and information possessed by consumers, in the factors that influence consumers' purchasing decisions, and in the manner by which consumers react to product warnings and . . . disclosure[s]").[18]  Any disclosure that Plaintiff's 320 GB SimpleSave did not automatically back up, in its factory configuration, ".wpd" WordPerfect or other specific files and that additional steps were required to back up those files is immaterial to a purchaser who did not use those files or who already knew that additional steps were required to back up those files, among others.

In fact, a survey of California residents conducted by HP's expert revealed purchasers

---

[17]    The objective "reasonable consumer standard" is inapplicable where, as here, materiality and/or reliance would vary from consumer to consumer.  *See Johnson*, 285 F.R.D. at 581. Plaintiff's request that the Court apply a "least sophisticated consumer" test is meritless.  As noted in the *Lavie* case Plaintiff cites, that test is rarely used and is reserved for "particularly susceptible audience[s], such as . . . preschool children," *not* sophisticated attorneys like Plaintiff. *Lavie v. Procter & Gamble Co.*, 129 Cal. App. 4th 496, 506 (2003).

[18]    *See also Edwards v. Ford Motor Co.*, No. 11-1058, 2012 WL 2866424, at *9 (S.D. Cal. June 12, 2012) (denying certification where "level of importance a potential car buyer places on safety concerns varies from consumer to consumer such that the reasonable consumer standard cannot be applied on a classwide basis"); *Fine v. ConAgra Foods, Inc.*, No. 10-01848, 2010 WL 3632469, at *3–4 (C.D. Cal. Aug. 26, 2010) (denying class certification of class that would likely include people with varying rationales behind their purchases").

would have been just as (or even more) likely to buy an external hard drive even if told on the packaging that additional action was needed to back up WordPerfect files and, at the very least, that any such determination requires an individual examination of any claim of materiality. *See* Simonson Dec. ¶13 (finding that even "explicit mention" on the SimpleSave packaging that "user action is needed" to back up WordPerfect files (and others) "has no impact whatsoever on the likelihood of buying"), ¶¶25-30. Consequently, among the varying criteria purchasers would consider, the "need to take action to backup WordPerfect files" appears to be insignificant. *Id.* ¶30 ("It is noteworthy, however, that respondents did not mention the need to take action in order to back-up WordPerfect files as a consideration . . . even those who might have such files do not regard that to be a significant decision factor"). That is hardly surprising given the array of considerations that drive individual purchase decisions—from brand recognition to appearance to storage capacity—that would overwhelm any materiality determination here. *Id.* ¶¶13(d); 30; *see also Sanchez*, 2009 WL 1514435, at *3 (concluding that individual issues predominated because "price, size, and other characteristics" mattered for some more than disclosure); *Pfizer*, 182 Cal. App. 4th at 631–32 (citing "brand-loyal[ty]" as factor precluding finding of materiality).

Plaintiff's own conduct helps illustrate this problem. He bought additional SimpleSave devices even after he knew they did not automatically back up his ".wpd" WordPerfect files. If, as he claims, Plaintiff's purchasing behavior is representative of others, then some purchasers bought their SimpleSave devices with knowledge of their operation. In that case, only individualized examinations can assess the materiality of HP's statements/alleged omissions. *See Sanchez*, 2009 WL 1514435, at *2 (explaining that "there are many individual factors that must be examined before determining whether a particular individual's behavior with respect to [product] would have been materially changed"); *see also Moheb*, 2012 U.S. Dist. LEXIS 167330, at *12–13 (denying certification where "class include[d] individuals who purchased [the product] for reasons other than reliance on representations about its effectiveness").

### 6. Plaintiff Has Not And Cannot Offer Any Reliable Method Of Calculating Classwide Restitution.

Plaintiff bears the burden of demonstrating a reliable method of calculating restitution on

a classwide basis—not merely promising one in the future.  *See*, *e.g.*, *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) ("[I]t is simply not enough that Plaintiffs merely propose to develop in the future some unspecified workable damage formula.  A concrete, workable formula must be described before certification is granted.") (internal quotations omitted); *Konik*, 2010 WL 8471923, at *10 (finding that individual inquiry needed to establish amount of restitution precluded certification of UCL class); *Campion*, 272 F.R.D. at 537 (rejecting UCL class because "individual issues predominate with regard to Plaintiff's claims for restitution").  Plaintiff has offered no expert or other evidence in an attempt to satisfy this requirement.

As explained above, the great majority of putative class members received exactly the product Plaintiff claims HP promised—*i.e.*, one that automatically backed up all of their files.  Still others knew how their SimpleSave devices operated before their purchases and bought them anyway.  Still others (like Plaintiff) understood that their SimpleSave did not automatically back up all types of electronic files—contrary to the alleged misrepresentation Plaintiff claims HP made.  Those purchasers cannot be included in any classwide restitution formula.  *See In re Hotel Tel. Charges*, MDL No. 89, 500 F.2d 86, 90 (9th Cir. 1974) (explaining that aggregate monetary relief award cannot include recovery for putative class members without viable claims); *see also Dukes*, 131 S.Ct. at 2561 (rejecting attempt to establish damages through formula because defendant "entitled to litigate its . . . defenses to individual claims").

### 7.   Plaintiff Cannot Satisfy Rule 23's Manageability And Superiority Requirements.

The Rule 23(b)(3) predominance and superiority requirements are not met where "each class member has to litigate numerous and substantial issues to establish his or her right to recover individually" and where the putative class claims cannot be managed in any efficient manner. *Zinser*, 253 F.3d at 1192.  That is the case here.  All of the individualized determinations described above that are required to resolve any putative class member's right to recovery would cause any trial to devolve into a never ending series of mini-trials on his/her claim.  *Helm v. Alderwoods Grp. Inc.*, No. 08-01184, 2011 WL 855810, at *7 (N.D. Cal. Mar. 9, 2011) (denying

certification because "the liability of defendants for any of the claims made will depend on the resolution of factual questions" on individual basis); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (finding class action not manageable where claims "necessitate[d] an individualized determination of a purchasing individual's motivation").

For his part, Plaintiff has offered no proposal for resolving the individual issues that pervade his claims in any classwide trial. *Zinser*, 253 F.3d at 1189 (explaining that class proponent bears burden of demonstrating "a suitable and realistic plan for trial of the class claims"); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996) ("Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome."); *Sweet*, 232 F.R.D. at 372 (denying certification where plaintiffs did not present viable trial plan). Nor could he.

Plaintiff cannot satisfy Rule 23(b)(3)'s superiority requirement for an additional reason— the SimpleSave software update (which he downloaded) already allows putative class members to make their SimpleSave devices automatically back up all of their files. HP believes that the great majority of putative class members who bought a SimpleSave with the pre-configured list of files already received a product that did, in fact, automatically back up all of their files. *See* Bass Dec. ¶¶18-23. Still, for any who did not, they can download the software update at no cost to them to address Plaintiff's complaint about his product. As other courts have concluded, a class action is not superior where putative class members can obtain a remedy outside the context of litigation and without the attendant costs and delay. *See Pagan v. Abbott Labs., Inc.*, No. 10-4676, 2012 WL 5289622, at *13 (E.D.N.Y. Oct. 20, 2012) (noting "the number of cases that have denied class certification in consumer class actions" because "a comparable or even better remedy" "provided a superior method of compensating the putative class members"); *Webb*, 272 F.R.D. at 504 (concluding that "class action is not superior" where defendant "already offering the very relief that Plaintiffs seek"); *In re PPA Prods. Liab. Litig.*, 214 F.R.D. 614, 622-23 (W.D. Wash. 2003) ("It makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress"); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 463 (D.N.J. 1998) (superiority not met in light of recall because "it is unclear if there is any useful remedy this Court

1  could fashion" for class).

2      **B.     Plaintiff Cannot Ignore Other SimpleSave Purchasers.**

3          Relying on *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), Plaintiff appears to argue that

4  the Court should ignore how the claims of absent class members would be resolved because,

5  unlike Plaintiff, he claims that they need not prove injury and causation and, therefore, their

6  SimpleSave experiences are irrelevant to the class certification inquiry.[19]   If that were true, a

7  product purchaser who received exactly the product a manufacturer promised and received no

8  misrepresentation could arguably recover money from the manufacturer because someone else

9  who claims to have had a different experience sued on his/her behalf.  Similarly, in the context of

10  this case, that view would lead to the illogical result that HP could face exposure from thousands

11  of SimpleSave purchasers even if, *inter alia*, a SimpleSave did not automatically back up only

12  one purchaser's files.  The law does not require such an illogical result.

13          *Tobacco II* addressed only who must satisfy the UCL *standing* requirements in a

14  California state court putative class action—not the "rigorous" class certification inquiry meant to

15  decide whether all putative class members' *right to recover* can be decided in one proceeding

16  based on the same evidence.[20]   Thus, where individualized inquiries are necessary to determine

17  (among other things) whether each putative class member was even exposed to an alleged

18  misrepresentation, class certification should be denied and *Tobacco II* does not require a different

19  result.[21]   That is precisely the case here.  The great majority of putative class members received a

20  SimpleSave that did, in fact, automatically back up all of their files and, therefore, any alleged

21  statement that it would do so was undeniably true—and still others did not see the packaging that

---

22  [19]     Motion at 8:11-12 ("All that is necessary is for the representative plaintiff to have relied
23  on the representations and advertisements and suffered injury.").

24  [20]     *See, e.g.*, *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009) (explaining in false
advertising case that "'standing' simply is not the same thing as the issue of 'commonality'");
25  *Pfizer*, 182 Cal. App. 4th at 632; *Konik*, 2010 WL 8471923, at *6 (explaining that "*Tobacco II*
court was focused on the issue of standing, not the 'rigorous' class certification analysis").

26  [21]     *See, e.g.*, *Pfizer*, 182 Cal. App. 4th at 643 ("*Tobacco II* does not stand for the proposition
27  that a consumer who was never exposed to an alleged false or misleading advertising or
promotional campaign is entitled to recover."); *Mazza*, 666 F.3d at 596 (same) (quoting *Pfizer*);
28  *Cohen*, 178 Cal. App. 4th at 980; *Konik*, 2010 WL 8471923, at *6; *Campion*, 272 F.R.D. at 533,
n.4.

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

1    is the basis for Plaintiff's claims or knew how the SimpleSave worked.  Those purchasers were

2    not exposed to an alleged misrepresentation and only individualized examinations of each

3    putative class member's circumstances can show which fit that description.  *See Konik*, 2010 WL

4    8471923, at *9; *Webb*, 272 F.R.D. at 498.[22]

5        *Tobacco II* (a California state case) also could not dispense with the Article III standing

6    requirement applicable in federal court.  Article III precludes recovery without standing (*i.e.*,

7    without an injury traceable to the defendant's alleged misconduct) and, therefore, no class can

8    include persons without Article III standing.[23]   Here, individualized examinations of each

9    purchaser's SimpleSave experience are required to determine whether he/she has suffered any

10   injury from HP's conduct and, therefore, class certification should be denied.[24]  *See Mazza*, 666

11   F.3d at 594; *O'Shea*, 2011 WL 4352458, at *12; *Burdick v. Union Sec. Ins. Co.*, No. 07-4028,

12   2009 WL 4798873, at *4, n.6 (C.D. Cal. Dec. 9, 2009).[25]

---

13   [22]     This case also includes nothing like the decades-long campaign of fraudulent tobacco
14   advertising that was the basis for *Tobacco II*.  *See, e.g.*, *Mazza*, 666 F.3d 596 (distinguishing
     *Tobacco II*); *Pfizer*, 182 Cal. App. 4th at 632.  It is one thing to say cigarette purchasers exposed
15   to a decades-long fraudulent advertising campaign (which included statements that were either
     uniformly true or false—not true or false depending on each purchaser's circumstances) may be
16   able to recover restitution; but it is quite another to say that restitution could be awarded to a
     putative class of purchasers that includes many for whom the statement at issue was true.  *See,*
17   *e.g.*, *Pfizer*, 182 Cal. App. 4th at 632 (distinguishing *Tobacco II*).

18   [23]     *See, e.g.*, *Mazza*, 666 F.3d at 594 ("No class may be certified that contains members
     lacking Article III standing.") (internal citation and quotation omitted); *O'Shea*, 2011 WL
19   4352458, at *8 ("*Tobacco II* addressed only the statutory standing requirements of California's
     UCL . . . [I]t did not address Article III standing in federal court" and explaining that "*Tobacco II*
20   does not permit a federal class action to proceed where class members lack Article III standing")
     (citation and quotation omitted); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1033-34 (8th
21   Cir. 2010) ("[I]t is not clear that the . . . discussion of standing in *Tobacco II* was meant to have
     any bearing on whether a plaintiff can satisfy the class certification requirement that common
22   questions of law or fact predominate. . . . [T]o the extent that *Tobacco II* holds that a single
     injured plaintiff may bring a class action on behalf of a group of individuals who may not have
23   had a cause of action themselves, it is inconsistent with the doctrine of standing as applied by
     federal courts."); *cf. Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 942 (S.D. Cal. 2007)
24   ("Even though California state law has more lenient standing requirements, standing sufficient to
     meet federal standards is a jurisdictional requirement imposed by Article III of the U.S.
25   Constitution and takes priority.") (Burns, J.).

26   [24]     Indeed, to allow Rule 23 to create different legal requirements for putative class members'
     claims than those that apply to named plaintiffs' claims would violate the Rules Enabling Act.
27   *Dukes*, 131 S.Ct. at 2561; *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S.Ct.
     1431, 1443 (2010) (explaining that Rule 23 cannot alter substantive legal rights).

28   [25]     *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) does not require a different

**C.      Certification Is Not Appropriate Under Rule 23(b)(2).**

HP previously demonstrated that the same issues identified above that preclude a finding of, *inter alia*, predominance likewise preclude Plaintiff from satisfying the cohesiveness requirement of Rule 23(b)(2).  *See Sweet*, 232 F.R.D. at 374 ("'While [Rule] 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive[,]'"—meaning they "must not be overrun with individual issues") (quotation omitted).  Accordingly, all of the issues that require purchaser by purchaser resolutions described above also defeat certification under Rule 23(b)(2).  *See id.* ("Because the predominance of individual issues barred certification under Rule 23(b)(3), certification under Rule 23(b)(2) is similarly barred"); *In re Paxil Litig.*, 212 F.R.D. 539, 552 (C.D. Cal. 2003) (same).  Plaintiff's attempt at certification under Rule 23(b)(2) fails for additional reasons as well.

**1.      Plaintiff Lacks Standing To Seek Injunctive Relief.**

Plaintiff lacks standing to seek injunctive relief and, therefore, cannot be a typical and adequate representative for any such claim.  *See Hawkins v. Comparet–Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001).  Now that Plaintiff knows how SimpleSave devices manufactured before August 2010 operate, and specifically that they do not automatically back up ".wpd" WordPerfect files (at least without the software update), he cannot show a "real [and] immediate threat that [he] will be wronged again—a likelihood of substantial and immediate irreparable injury." *See Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also In re Intel Laptop Battery Litig.*, No. 09-02889, 2011 WL 7290487, at *2 (N.D. Cal. Apr. 7, 2011) ("If a plaintiff has knowledge of a

---

result.  After *Stearns*, the Ninth Circuit explained that all putative class members must have Article III standing.  *See Mazza*, 666 F.3d at 594.  *Stearns* did not conclude otherwise—or that class certification is appropriate even where there is no common proof of injury traceable to the defendant's conduct.  *See O'Shea*, 2011 WL 4352458, at *9-12 (distinguishing *Stearns* and denying class certification).  *Stearns* concluded only that, on that facts before it, all of the putative class members did, in fact, have Article III standing because they lost money as a result of the defendant's alleged misconduct.  *See Stearns*, 655 F.3d at 1021.  But in this case, class certification is improper precisely because the determination of whether each putative class member was injured from HP's conduct requires purchaser by purchaser examinations to assess whether, *inter alia*, his/her SimpleSave did, in fact, automatically back up all of his/her files.  *See Mazza*, 666 F.3d at 595 (explaining that Article III standing exists "[t]o the extent that" purchasers paid money as a result of "deceptive conduct").  Put simply, unlike in *Stearns* where the Court concluded that "each member had purportedly been victimized by the allegedly fraudulent scheme," that question is not subject to common proof here.  *See O'Shea*, 2011 WL 4352458, at *9-12 (distinguishing *Stearns*).

defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge precludes him from showing a likelihood of being injured in the future by those practices."); *Cattie*, 504 F. Supp. 2d at 951 (questioning plaintiff's standing to pursue injunctive relief because "[e]ven if she was [injured by false advertising] it is unclear how prospective relief will redress her injury, since she is now fully aware of the linens' thread count") (Burns, J.).[26]

### 2.   Plaintiff's Claim For Monetary Relief Is Not Merely Incidental To Injunctive Or Declaratory Relief.

Certification under Rule 23(b)(2) for claims seeking monetary relief is possible only where the monetary relief is "incidental to the injunctive or declaratory relief." *Dukes*, 131 S.Ct. at 2557. Plaintiff, however, cannot benefit from any injunction; not only because he knows how the SimpleSave operates, but also because the software update already allows SimpleSave users to automatically back up all files and HP no longer sells SimpleSaves that do not automatically back up all files. Main Dec. ¶14. Where an injunction provides no benefit, monetary claims are not "incidental." *See Moheb*, 2012 U.S. Dist. LEXIS 167330, at *19 ("[P]laintiff cannot benefit from injunctive relief and, thus, monetary relief is necessarily her 'primary concern'"); *see also Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 250 (C.D. Cal. 2006).

### 3.   No Single Injunction Could Benefit All SimpleSave Purchasers.

Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment . . . . Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S.Ct. at 2557. Neither requirement is met here. No single injunction could benefit every SimpleSave purchaser—among other reasons because the great majority already have a product that automatically backs up all of their files. Likewise, just as in *Dukes*, Plaintiff seeks monetary relief (restitution) in individualized amounts for each putative class member. *See id.*; *Moheb*, 2012 U.S. Dist. LEXIS 167330, at *18-19.

---

[26]   HP further incorporates by reference its Motion for Summary Judgment and its supporting papers. Dkt. No. 84.

HEWLETT-PACKARD COMPANY'S OPPOSITION TO PLAINTIFF'S CLASS CERTIFICATION MOTION

#### D.      Plaintiff Is Not A Typical Or Adequate Class Representative.

Plaintiff is not a typical or adequate class representative because his claims and alleged injury arise out of facts that are unique to him and his SimpleSave experience.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Falcon*, 457 U.S. at 156**.**  For instance, Plaintiff is not typical of SimpleSave purchasers who: (1) only used files on the pre-configured list of files to be backed up; (2) read the User Manual and added file types to the list of files to be automatically backed up; (3) downloaded the updated software before losing any files to a computer crash; (4) purchased a SimpleSave with the updated software or at a time when the updated software was immediately available for download; (5) did not see the alleged misrepresentation at issue; (6) knew how the device worked based on pre-purchase investigation; or (7) bought a SimpleSave other than the 320 GB and, thus, with packaging including different and additional disclosures.  Put simply, the resolution of Plaintiff's own claims will not resolve other purchasers' claims because of his own unique circumstances and, therefore, he is neither typical nor adequate.  *See Dukes*, 131 S.Ct. at 2551, n.5.

Plaintiff is also subject to unique defenses that make him atypical.  *See Hanon*, 976 F.2d at 508.  Plaintiff, for instance, did not receive the alleged misrepresentation that is the basis for his claims—*i.e.*, that the device would back up "all file types"—because he understood that there might be file types that his SimpleSave did not automatically back up.  KTH Dec., Ex. A 86:16-20; 88:2-7.

#### E.      Plaintiff's Putative Class Is Overbroad And Not Ascertainable.

Plaintiff's proposed class is overbroad and not ascertainable because it purports to include purchasers without injury and, thus, without standing to sue.  *See Mazza*, 666 F.3d at 594; *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567-68 (N.D. Cal. 2009) (denying certification of class which included unharmed members); *Konik*, 2010 WL 8471923, at *9 (same); *Fine*, 2010 WL 3632469, at *3 ("[A] class must be defined in such a way that anyone within it would have standing").

By defining his class to include "all purchasers . . . [in] California," Plaintiff has included SimpleSave purchasers who (1) only used file types included on the pre-configured list of files; (2) purchased a SimpleSave with the updated software; (3) downloaded the software update upon

their first use or before losing any files; (4) did not see the alleged misrepresentation because they bought online; and (5) understood how the SimpleSave (with the original software) would treat their files either through pre-purchase investigation or experience with other SimpleSaves. These putative class members lack standing because they were not injured or exposed to a misrepresentation or received the product they were allegedly promised and can only be identified through a purchaser by purchaser examination.[27]  *See O'Shea*, 2011 WL 4352458, at *12 ("[A]bsent a showing that [the unnamed class members'] injury was caused by the allegedly deceptive advertising, they lack standing to proceed in federal court"); *Moheb*, 2012 U.S. Dist. LEXIS 167330, at *7 (denying class that included "members who derived benefit from [the product], and are satisfied users of the product" because they "have no injury and no standing").[28]

## V.    CONCLUSION

The Court should deny Plaintiff's motion for class certification.[29]

Dated: January 21, 2013                    Respectfully submitted,

                                           By:    /s/ Kristofor T. Henning
                                                  Kristofor T. Henning

---

[27]    Plaintiff also lacks standing to sue for purchasers who did not buy a 320 GB SimpleSave because that is the only device he bought before he knew the SimpleSave would not automatically back up ".wpd" files and because the representations on the packaging differ between the products (*i.e.*, the 1 TB packaging makes the additional disclosure that users could "[e]asily add additional file types" for backup). *E.g.*, *Miller v. Ghirardelli Chocolate Co.*, No. 12-04936, 2012 WL 6096593, at *9-10 (N.D. Cal. Dec. 7, 2012) (finding plaintiff did not have standing to sue over additional products he did not purchase).

[28]    *See also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (class definition improperly included "individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages"); *Oshana*, 472 F.3d at 514 (rejecting class which included purchasers "who were not deceived and thus had no grievance").

[29]    In its January 12, 2013 Order, the Court suggested that a class certification denial would "result in the remand of this case to state court[.]" Dkt. No. 88 at 1:27-28. Under *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. Shell Oil Co.*, 602 F.3d 1087 (9th Cir. 2010), however: "If the putative class action was properly removed to begin with, the subsequent denial of Rule 23 class certification does not divest the district court of jurisdiction. The case remains removed and is not to be remanded to state court." *See United Steel*, 602 F.3d at 1089. The Court previously ruled that HP properly removed this matter. Dkt. No. 29. Therefore, upon denial of Plaintiff's class certification motion, HP respectfully requests that the Court set a hearing and briefing schedule as soon as practicable under the Court's calendar for HP's summary judgment motion challenging Plaintiff's individual claims.